## UNITED STATES BANK *v.* LYON COUNTY *et al.*

*(Circuit Court, N. D. Iowa, W. D. June 15, 1891.)*

RESCISSION OF CONTRACT—EQUITY JURISDICTION—REMEDY AT LAW.

In a suit against a county and its agent the bill alleged that said agent induced complainant to buy bonds of the county by the false representations that they were issued to refund indebtedness, all of which had been in judgment against the county; that whether any of the bonds represented indebtedness which was enforceable against the county could be determined only by an investigation of the county's financial history for many years past; that when said bonds were issued, the legal limit of indebtedness had already been exceeded; that the county denied the validity of the bonds. The prayer was for a rescission of the contract of sale, the bonds being tendered back, and for a judgment for the amount paid. *Held*, that the bill failed to show a case within equitable jurisdiction, as an action for money had and received would accomplish all that was sought save the rescission, which was unnecessary.

In Equity. Demurrer to amended bill.

*Henderson, Hurd, Daniels & Kiesel,* for complainant.

*Van Wagenen & McMillian, Kauffman & Guernsey,* and *E. C. Roach,* for defendants.

SHIRAS, J. The facts averred in the amended bill herein filed are in brief as follows: That during the period from April, 1884, to September, 1885, inclusive, the county of Lyon, in the state of Iowa, under the provisions of the several statutes of Iowa then in force, ordered the issuance of the bonds of the county, and, in pursuance thereof, there was issued a series of bonds, 120 in number, for the sum of $1,000 each, with interest coupons attached; that in September, 1885, the defendant Richards, then being the agent of the county, duly authorized, requested the complainant to purchase five of said bonds, being those numbered 091 to 095 inclusive; that the value of the taxable property of said county at that time, as shown by the state and county tax-lists for the year 1884, did not exceed the sum of $1,580,735; that, in order to induce complainant to purchase said bonds, the said Richards, as agent of said county, represented that the said series of 120 bonds had been issued to refund indebtedness of the county evidenced by bonds previously issued, the validity of which indebtedness had been established by judgments against said county; that, relying upon these representations, complainant purchased said five bonds, paying therefor the sum of $5,100, which money was received and used by the said county; that the representations thus made are false, it not being true that said 120 bonds were issued to refund indebtedness, all of which had been in judgment against said county, but only a portion thereof had been evidenced by judgment; that the said Richards and the said county well knew at the time that said representations so made were untrue; that after the year 1887 the county ceased to pay interest on said bonds, and now refuses to recognize said bonds as being valid obligations of the county, and now avers that the same were not issued to refund a previously existing valid indebtedness, which had been evidenced in whole by judgments against said county; that from the investigation made by complainant it now ap-

pears that said bonds do not represent indebtedness which had been previously put in judgment against said county, and that whether said series of 120 bonds or the 5 bonds owned by complainant, represent, in part, indebtedness which was enforceable against the county can only be finally determined by an accounting, which shall include an investigation of the entire financial history of the county for many years past; that when the bonds sold to complainant were issued the legal limit of indebtedness, to-wit, 5 per cent. upon the assessed value of taxable property, had already been exceeded. Based upon the facts set forth, complainant prays for a decree rescinding the contract of sale of said bonds, the same being tendered back to the defendant county, and for a judgment against the defendants Richards and the county of Lyon for the amount paid for said bonds by complainant; the latter accounting for the sums received by way of interest on said bonds.

To this bill a demurrer is interposed on behalf of the defendants, mainly upon the ground that the bill does not show a case of equitable cognizance, as complainant has an adequate remedy at law. So far as a decree is asked against the defendant Richards, it does not appear that there is need or ground for the exercise of the powers of a court of equity in granting relief as to him. The complainant has no contract with him to be rescinded, and, in effect, the bill as against him amounts only to a suit for damages based upon the alleged false statements made by him to induce the complainant to purchase the bonds of the county. Do the allegations of the bill show a need for a decree rescinding the contract of sale as against the county? It is therein charged that the county repudiates the validity of the bonds, and refuses to recognize them as of any force; and it is averred that the complainant has tendered them back to the county. Of what benefit would a decree rescinding the sale be under such circumstances? If the county was seeking to hold the complainant bound thereby, it might be necessary to have it decreed void for fraud; but, if both the parties now practically repudiate it, how can it stand in the way of any legal proceeding which complainant may wish to bring for the protection of its rights.

The bill filed in this cause does not seek a decree for the return of any specific property, nor to clear the title of complainant to property wrongfully obtained from it; neither does it seek to have a full accounting in regard to the entire series of 120 bonds, issued by the county and sold to different parties, including complainant, in order that it might be ascertained what part, if any, of said series of bonds, either in number or proportionate amount, is valid and collectible from the county, and what proportion thereof is equitably the property of plaintiff. In such case the inquiry and accounting would be of such a nature as to require equitable aid to accomplish it. The bill, however, is not framed for that purpose. It charges the making the fraudulent representations in regard to the character of the bonds, and the present repudiation thereof by the county, as ground for asking a decree of rescission, and then prays for a decree or judgment for the amount of money paid by it, and received by the county, as the purchase price for the bonds in question.

Why cannot an action at law be maintained, either for damages on the ground of false representations, or for money had and received, which, in effect, will cover all that the complainant is seeking in the present proceeding? If it were necessary, in order to maintain such an action, that the plaintiff should prove the nature of all the indebtedness existing against the company, and which had been refunded in the series of 120 bonds issued by the county, it might then be true that the complexity of such investigation and accounting would be such as to justify an appeal to a court of equity, on the ground that the mode of trial before a court and jury in an action at law would be inadequate to meet the exigency of the situation. In an action at law for money had and received, to prove the invalidity of the bonds, and their repudiation by the county, an investigation of the kind indicated would not be necessary. The general fact that false statements touching the bonds had been made, and that the county now repudiated the same, and denied the validity thereof, would be sufficient, so far as that issue would be material, without going into an exhaustive investigation of the details of such pre-existing indebtedness. According to the allegations of the bill, the county repudiates all liability on said bonds, and does not take the ground that it is liable on such part thereof as might be found to represent a previous existing valid indebtedness, but is not liable on the remainder; in other words, the county repudiates the contract of sale by virtue of which it obtained $5,100 from the complainant. In like manner the complainant does not now seek the aid of the court of equity for the purpose of ascertaining whether any part of the bonds owned by it represent a valid consideration, so as to be enforceable against the county; or, in other words, it does not seek equitable aid in order to sift out and separate the valid from the invalid indebtedness, and to compel the county to recognize and pay such part as may be adjudged to be valid. In effect, the averments of the bill are simply that, by false representation, it was induced to pay to the county $5,100 for five bonds issued by the county, which bonds the county now repudiates, and therefore complainant wishes a decree rescinding the contract of sale and a judgment for the sum paid by it to the county, less any payments made thereon. An action for money had and received will accomplish all that is thus sought, save the entry of a formal decree rescinding the contract of sale, which, so far as is now made to appear, is wholly unnecessary, as that contract is not relied upon by the county, but, on the contrary, is treated as being invalid and void, in that the county now denies all liability on the bonds, claiming that the issuance and sale thereof was in violation of the constitutional limitation upon the amount of indebtedness that could be legally incurred by the county.

It not appearing, therefore, that equitable aid is necessary for the accomplishment of what is aimed at by complainant, which is a judgment for the money paid to the county, it must be held that the bill fails to show a case within equitable jurisdiction, and the demurrer is therefore sustained.